# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-KA-01080-SCT

*KHA TAO PHAM*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/30/96 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT |
| ATTORNEY FOR APPELLANT: | TOM SUMRALL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/02/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/23/98 |

**BEFORE PITTMAN, P.J., BANKS AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

### SUMMARY

¶1. Kha Tao Pham ("Pham") appeals his conviction for the capital murder of Tuong Nguyen ("Nguyen"). Pham and an as yet undiscovered accomplice called Chan attempted to rob Tuong Nguyen and Thien Nguyen ("Thien") in their home. During a scuffle, Pham's companion apparently discharged his weapon, fatally wounding Tuong Nguyen. Pham was subsequently wrestled to the floor and detained until the police arrived. A jury found Pham guilty of capital murder. The State waived the death penalty, and the judge sentenced Pham to life without parole. Pham filed timely appeal to this Court, raising the following issues for consideration:

**I. WHETHER THE TRIAL COURT ERRONEOUSLY EXCLUDED CERTAIN HEARSAY STATEMENTS MADE BY PHAM'S ACCOMPLICE CONCERNING THE**

**REASONS THAT THE TWO WERE GOING TO THE NGUYEN HOUSE.**

**II. WHETHER THE TRIAL COURT ERRED BY ADMITTING EVIDENCE TENDING TO SHOW THAT THIEN AND TUONG NGUYEN WERE IN THE MARKET FOR A SHRIMP BOAT AND HAD AMASSED SOME 43,000 DOLLARS IN ANTICIPATION OF PURCHASING IT.**

**III. WHETHER THE TRIAL COURT IMPROPERLY SENTENCED PHAM TO LIFE IMPRISONMENT IN VIOLATION OF MISS. CODE. ANN. § 99-19-101.**

¶**2.** This Court finds all three issues to be without merit.

## FACTS

¶3. The facts of this case center around an altercation which occurred at 11 Betsy Avenue in Pass Christian, Mississippi, in the early morning of October 18, 1994. Quy Nguyen lived in the house with his wife, children, and his two brothers, Thien Nguyen and Tuong Nguyen. Also staying in the house was Hai Sam, a nephew of the Nguyens.

¶4. The Nguyens' version of events is as follows. On this particular night, Hai Sam testified that he was asleep in the bedroom and that Thien Nguyen and Tuong Nguyen had fallen asleep in the living room at about 11:00 p.m. and were sleeping on the couch. At about 1:30 a.m., Hai Sam was awakened by the sound of a car engine and looked out the window to see two men standing at the front door of the house. The two men left and Sam went back to sleep, only to be awakened again 15 minutes later by a knock at the front door. The two men told Sam that they were looking for Thien. Sam woke Thien up and went to the front door. Thien and Sam, now both standing at the front door, opened the door a crack and the two men proceeded to push against the door, attempting to enter the house.

¶5. Sam testified that at this point he called his uncle Tuong and the three attempted to hold the door against the intruders. Pham, however, was able to slip inside. Sam testified that he drew a weapon and demanded money. Thien grabbed Pham and attempted to disarm him. A shot was fired through the partially open door and hit Tuong in the chest. The intruder outside fled and Sam slammed the door. The three wrestled Pham to the couch and pinned his gun arm under his body until officer Ladner arrived.

¶6. Pham's version of the story was very different. He testified on his own behalf that his mysterious companion Chan and himself had gone to the Nguyen's house to work out a previous dispute that Chan had had with Thien, and that there was never any intention to rob them. Pham further testified that they arrived and the door was opened, the two inside the house jumped him and he dropped his gun out of his pocket. Pham averred that he then grabbed the gun and held onto it in fear that his assailants would kill him with it.

¶7. Pham was arrested, pled innocent, and was ultimately found guilty of capital murder for the death of Tuong Nguyen.

## DISCUSSION

I. The lower court erred by excluding the statements allegedly made by chan to pham as hearsay, but such exclusion was harmless error.

¶8. Pham contends that the trial court erred when it excluded certain statements allegedly made by Chan, Pham's unlocated companion, as the two embarked on the trip to Quy Nguyen's house. Pham's proffer reveals that he sought to testify to the following:

INTERPRETER: Chan told me that he and Thien had had a fight before, and he wanted to drive there to meet Thien and talk it out. And that's all. But I didn't ask him any questions. I just light a cigarette and smoked.

¶9. Pham contends that the exclusion of such evidence improperly limited him from presenting his theory of the case and that the proffered evidence was admissible because it was not offered to show the truth of the matter asserted.

¶10. Miss. R. Evid. 801 (c) defines hearsay as follows: "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." This Court has followed the comment to that section which states that, "If the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then, the statement is not hearsay." Miss. R. Evid. 801 *cmt. See **Eselin-Bullock & Assoc. Ins. Agency, Inc. v. National Gen. Ins. Co.**, 604 So. 2d 236, 242 (Miss. 1992); **Mickel v. State**, 602 So. 2d 1160, 1162 (Miss. 1992); **Gayten v. State**, 595 So. 2d 409, 414 (Miss. 1992).

¶11. The statement offered by Pham did not seek to demonstrate the truth of whether Chan and Thien had actually had a fight, but was simply offered to show what Pham was told that they did, tending to show that Pham was not going to the Nguyen household to rob them. As such the statement was certainly relevant evidence that Pham lacked the intent necessary to convict him of capital murder. Furthermore, it should be noted that Pham was fully available for cross as to whether this statement was actually made and the overall context of the statement had it been allowed. Thus Pham's argument that the lower court erred in excluding the evidence is well taken.

¶12. In the instant case, however, this error was harmless. A party must do more than simply show some technical error has occurred before he will be entitled to a reversal on the exclusion or admission of evidence; there must be some showing of prejudice. "[F]or a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." **Terrain Enter., Inc. v. Mockbee**, 654 So. 2d 1122, 1131 (Miss. 1995)(*citing* **Hansen v. State**, 592 So. 2d 114 (Miss. 1991)); **Russell v. State**, 607 So. 2d 1107, 1114 (Miss. 1992); Miss. R. Evid. 103(a). In this case the State presented the testimony of two eyewitness that Pham had forced his way into their house brandishing a weapon and demanding money. Furthermore, Pham was apprehended with a loaded, albeit unchambered, weapon. Under these circumstances the erroneous exclusion of Pham's conversation with the mysterious Chan was harmless beyond a reasonable doubt.

II. The Trial Court Did Not Err in allowing evidence that thien and tuong had been planning to buy a shrimping boat and had on hand a large quantity of cash to effect such purchase.

¶13. Pham also contends that the trial court improperly allowed the prosecution to put on evidence concerning Nguyen's recent plans to buy a shrimp boat and the large amount of cash that they had amassed for doing so.

¶14. Miss. R. Evid. 401 defines "relevant evidence" as follows:

> "Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

¶15. Here, such evidence was certainly relevant to demonstrate a possible motive for an armed robbery. The State sought to establish that the "word was out", so to speak, that Thien and Tuong had a large amount of ready cash. The inference obviously was that the defendant knew of this money, and thus had a likely motive for armed robbery.

¶16. Under Miss. R. Evid. 103, the judge has considerable discretion when determining the relevancy of proffered evidence. "`[T]he relevancy and admissibility of evidence is largely within the discretion of the trial court and reversal may be had only where that discretion has been abused.'" *Peterson v. State*, 671 So. 2d 647, 658 (Miss. 1996)(*quoting Johnson v. State*, 655 So.2d 37, 41 (Miss. 1995)); *Johnson v. State*, 666 So. 2d 499, 503 (Miss. 1995) ("The relevancy and admissibility of evidence are left, in large part, to the discretion of the trial court."); *Terrain Enter., Inc. v. Mockbee*, 654 So. 2d 1122, 1128 (Miss. 1995) ("`Relevancy and admissibility of evidence are largely within the discretion of the trial court and this Court will reverse only where that discretion has been abused.'") (*quoting Hentz v. State*, 542 So. 2d 914, 917 (Miss. 1989)); *Burt v. State*, 493 So. 2d 1325, 1326 (Miss. 1986).

¶17. Pham's objection that there was no indication that Pham or Chan knew of this money goes to ultimate weight of the evidence. Here, the jury was certainly in a prime position to give the appropriate weight to the State's proffered evidence, and properly weigh to what extent this strengthened the State's case, if at all. Furthermore, Pham was free to develop the weaknesses in this evidence on cross, as well as the fact that the money was not actually at the house at the time of the attempted robbery.

¶18. In sum, the trial judge was well within the considerable bounds of his discretion in allowing the evidence.

### III. The Trial Judge Did Not Improperly Sentence Pham to Life in Prison Without Parole.

¶19. The jury in this case clearly found Pham guilty of capital murder and returned a verdict reading, "We the jury find the Defendant, Kha Tao Pham, guilty of Capital Murder."

¶20. Miss. Code. Ann. § 97-3-21 (1994) provides:

> Every person who shall be convicted of capital murder shall be sentenced (a) to death; (b) to imprisonment for life in the State Penitentiary without parole; or (c) to imprisonment for life in

the State Penitentiary with eligibility for parole as provided in Section 47-7-3(1)(f).

Further, Miss. Code Ann. § 99-19-101 (1) (1994) provides in relevant part:

> Upon conviction or adjudication of guilt of a defendant of capital murder or other capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment. . . .

Finally, Miss.Code Ann. § 47-7-3 (1)(Supp. 1995) provides in relevant part:

> (e) No person shall be eligible for parole who, on or after July 1, 1994, is charged, tried, convicted and sentenced to life imprisonment without eligibility for parole under the provisions of Section 99-19-101;

> (f) No person shall be eligible for parole who is charged, tried, convicted and sentenced to life imprisonment under the provisions of Section 99-19-101;

¶21. Thus, although under the relevant code provisions, while there is the apparent necessity of a choice between death, life, and life without parole, in reality there is really only a choice between death and life without parole in the capital case in this context. Obviously, if the State is not seeking the death penalty, the only possible sentence for conviction of capital murder committed after July 1, 1994, the effective date of § 47-7-3, is life without parole; and, this is the only sentence which the jury could have given Pham. Thus, the question is whether a trial judge may impose the only possible sentence without formally returning the matter to the jury for sentencing. We find that he can.

¶22. In *Bullock v. Harpole* this Court addressed the entry of a guilty plea on the crime of rape. The defendant argued on appeal that the statute required sentencing by a jury; and thus, that the imposition of sentence by the trial judge upon entry of his guilty plea was invalid. This Court rejected that argument, and in the process stated:

> A jury in this case could have fixed no lighter punishment than that which the court imposed. The appellant could have gained nothing by having the court go through the formality of empaneling a jury for the purpose of obtaining the jury's approval of the sentence of life imprisonment, and no prejudice resulted from the failure of the trial judge to empanel a jury to fix the punishment.

*Bullock v. Harpole*, 233 Miss. 486, 494, 102 So.2d 687, 690 (1958).

¶23. *Bullock* dealt with a guilty plea, but this Court relied upon its reasoning in *Williams v. State*, 427 So. 2d 100 (Miss. 1983). In that case the defendant had been duly convicted by a jury of rape. At that time, rape being capital, the death penalty was an option, but the State proceeded throughout the entire trial under the presumption that it was not seeking the death penalty. *Williams*, 427 So. 2d at 105. Upon entry of the verdict, the judge sentenced the defendant to life in prison. The defendant appealed on grounds not relevant to this case, but this Court again addressed the issue of whether the

trial judge could validly impose the only available sentence without returning the matter to the jury and stated:

> On that guilty verdict by the jury, with no other sentence to be imposed, the status of the case was the same as in ***Bullock v. Harpole***, supra. Therefore, we hold that the trial judge was not required to send the jury back to the jury room for the purpose of returning a verdict of life imprisonment, and he did not commit error in the procedure followed by him.

*Williams v. State*, 427 So. 2d 100, 106 (Miss. 1983).

¶24. In sum, given the fact that there was only one sentence which Pham could receive upon a valid conviction of capital murder under the facts of this case, Pham's right to due process was not violated by the trial judge cutting out the extra, but meaningless, procedural step. To hold otherwise would elevate form over function.

## CONCLUSION

¶25. In conclusion, the trial court erred in excluding the alleged statements made by Pham's companion, but such exclusion was harmless error in light of the other evidence against Pham adduced at trial. Furthermore, the trial judge was within his discretion to admit evidence of the large quantity of money amassed by Thien and Tuong Nguyen for the purchase of a shrimp boat. Finally, the trial judge did not err in sentencing Pham to life without parole without returning the question to the jury because, under the relevant statutory provisions, there was only one possible sentence which could be imposed.

**¶26. CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT POSSIBILITY OF PAROLE OR EARLY RELEASE AFFIRMED**.

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**