# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00716-COA

STEPHEN VIRGIL McGILBERRY A/K/A STEPHEN McGILBERRY        APPELLANT

v.

STATE OF MISSISSIPPI        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/25/2017 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | STACY L. FERRARO |
| | ROBERT MICHAEL CUNNINGHAM II |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KATY TAYLOR GERBER |
| | JOSEPH SCOTT HEMLEBEN |
| DISTRICT ATTORNEY: | ANTHONY N. LAWRENCE III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 01/15/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, C.J., BARNES AND CARLTON, P.JJ.**

**BARNES, P.J., FOR THE COURT:**

¶1. In 1994, sixteen-year-old Stephen McGilberry was indicted on four counts of capital murder for the bludgeoning deaths of Patricia Purifoy, his mother; Kenneth Purifoy, his stepfather; Kimberly Self, his half-sister, and Kristopher Self, his three-year-old nephew and Kimberly's son. On February 8, 1996, after a jury trial in Jackson County Circuit Court,

McGilberry was convicted on all counts and sentenced to death.[1]

¶2.    Following the United States Supreme Court's decision in *Roper v. Simmons*, 543 U.S. 551 (2005)—holding it is unconstitutional to impose capital punishment for crimes committed before age eighteen—the trial court resentenced McGilberry to life without eligibility for parole (LWOP) on all four counts, with the sentences to run consecutively in the custody of the Mississippi Department of Corrections.

¶3.    In 2012, the Supreme Court held in *Miller v. Alabama*, 567 U.S. 460 (2012), that imposing a mandatory sentence of LWOP on an offender under the age of eighteen violated the Eighth Amendment's prohibition against cruel and unusual punishment.  The *Miller* Court identified several factors the sentencing authority must consider before sentencing a juvenile offender to LWOP, stating:

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences.  It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional.  It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him.  Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. . . .  And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Id*. at 477-78 (citations omitted).  In light of *Miller*'s holding, McGilberry filed a motion to

---

[1] The Mississippi Supreme Court affirmed McGilberry's convictions and sentences on June 3, 1999.  *McGilberry v. State*, 741 So. 2d 894, 925 (¶137) (Miss. 1999).  McGilberry subsequently filed a petition for post-conviction relief, which the supreme court denied on March 6, 2003.  *McGilberry v. State*, 843 So. 2d 21, 34 (¶35) (Miss. 2003).

vacate his sentences with the Mississippi Supreme Court in 2014. The supreme court granted McGilberry leave to file a motion for post-conviction relief (PCR) in the trial court.

¶4. On November 23, 2015, the trial court denied McGilberry's PCR motion in part, and deferred ruling in part until a *Miller* resentencing hearing could be held. A motions hearing was held on November 7, 2016, with McGilberry arguing that he should be resentenced to life with eligibility for parole and that he be resentenced by a jury. The court denied McGilberry's motion to be resentenced by a jury; his motion to be resentenced to life with eligibility for parole was held in abeyance until after a hearing on December 6, 2016.[2]

¶5. At the *Miller* hearing, the State offered the trial transcript and testimony from two victim-impact witnesses. McGilberry presented the expert testimonies of three witnesses: Dr. Marc Zimmerman, Dr. Sarah Deland, and Dr. Julie Teater. Dr. Zimmerman, an expert in forensic psychology who had examined McGilberry in 2001, testified that it was his belief McGilberry had been "neglected and abused." He found McGilberry to be "more mature" since 2001 and said he would not assess him as "incorrigible." Dr. Zimmerman acknowledged, however, that prison, with its structure and restrictions, had likely contributed to McGilberry's progress.

¶6. Dr. Deland, a forensic psychiatrist, examined McGilberry in 2001 and 2016. She

---

[2] Although the jury had the option to sentence McGilberry to death, LWOP, or life imprisonment, the State has not challenged the applicability of *Miller* to McGilberry's sentences. *See Miller*, 567 U.S. at 477-79 ("*Mandatory* life without parole for a juvenile precludes consideration of his chronological age and its hallmark features . . . . We therefore hold that the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders.") (Emphasis added). Therefore, we deem this issue waived.

noted that there had been substance abuse and mental health issues in his family and that he had issues with controlling his impulses and was emotionally immature. With regard to her recent examination, she testified that he was "a quite different person," and she found no "evidence of active mental illness." She admitted on cross-examination that McGilberry had violated prison rules by possessing contraband, including alcohol and two "shanks." Dr. Teater, an expert in forensic and clinical psychology who had recently examined McGilberry, noted his family history of mental issues and substance abuse. But she acknowledged that McGilberry recalled to her only two instances when his mother was abusive, pulling his hair.

¶7. The trial court entered its "Resentencing Order" on April 25, 2017. Discussing the *Miller* factors—particularly the defendant's family and home environment, the heinousness of the crime, the defendant's age and attendant characteristics, and whether the defendant was irreparably corrupt—and the experts' testimony, the court upheld McGilberry's consecutive sentences of LWOP. The trial court noted that McGilberry was the "ringleader" of the plot to commit the brutal murders of his mother, stepfather, half-sister, and nephew, acting with deliberation in planning the murders and trying to conceal the evidence. The court also determined that McGilberry had expressed no remorse or regret, except to tell Dr. Deland he now realized he had other options at the time. Since being incarcerated, McGilberry has had twenty-three rules violations, including possession of weapons and alcohol.

¶8. McGilberry appeals, alleging that (1) the trial court failed to comply with the legal standards and procedures in *Miller*; (2) he should have been resentenced by a jury; (3) his

4

sentences of LWOP are constitutionally disproportionate; and (4) his sentences constitute cruel and unusual punishment under the Eighth Amendment of the United States Constitution. Consistent with our recent decision in *Wharton v. State*, 2017-CA-00441-COA, 2018 WL 4708220 (Miss. Ct. App. Oct. 2, 2018), we find that McGilberry is entitled to resentencing by a jury because he was convicted of capital murder and sentenced under Mississippi Code Annotated section 99-19-101 (Rev. 1994). Accordingly, we reverse and remand for resentencing by a jury.

## DISCUSSION

¶9. At a motions hearing on July 17, 2015, McGilberry's counsel argued that McGilberry "was entitled to a jury for purposes of resentencing," since section 99-19-101 does not provide any exception to the jury's sentencing a capital offender. The trial court found no merit to this argument and denied the motion. McGilberry reasserted his claim in a separate motion for jury resentencing, which the trial court also denied, adopting its previous ruling. On appeal, McGilberry again argues that under section 99-19-101, he "was entitled to be resentenced by a jury" and therefore, his sentences should be vacated and the case remanded.

¶10. Section 99-19-101(1) (Rev. 2014) provides in pertinent part:

> Upon conviction or adjudication of guilt of a defendant of capital murder or other capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable. If, through impossibility or inability, the trial jury is unable to reconvene for a hearing on the issue of penalty, having determined the guilt of the accused, the trial judge may summon a jury to determine the issue of the imposition of the penalty. If the trial jury has been waived, or if the defendant pleaded guilty, the sentencing proceeding shall be conducted before a jury

5

impaneled for that purpose or may be conducted before the trial judge sitting without a jury if both the State of Mississippi and the defendant agree thereto in writing.

In *Wharton*, our Court addressed this precise issue posed by McGilberry—whether a juvenile capital defendant, who is convicted by a jury, is entitled to sentencing by a jury in a *Miller* hearing. We determined that section 99-19-101 confers the right to be resentenced by a jury in such circumstances, holding:

> Specifically, under section 99-19-101's sentencing scheme, the Legislature has vested sentencing authority in the jury, and that authority only allows a sentencing proceeding to be conducted before a trial judge without a jury if the right to a jury was waived or the defendant pleaded guilty. . . . Moreover, the Mississippi Legislature has not prescribed any other resentencing authority or procedure to consider the postconviction *Miller* resentencing factors, as other states have done. Accordingly, the sentencing authority to consider the *Miller* factors in Wharton's case remains with the jury, as prescribed by section 99-19-101.

*Wharton*, 2018 WL 4708220, at *4-5 (¶15).

¶11. Since our decision in *Wharton*, the State has filed a motion for rehearing, asserting that section 99-19-101 is not applicable to resentencing under *Miller*. As the motion directly addresses our analysis in the present case, we find it necessary to discuss these issues. In its motion, the State cites *Cook v. State*, 242 So. 3d 865 (Miss. Ct. App. 2017), and *Pham v. State*, 716 So. 2d 1100 (Miss. 1998), as contrary to *Wharton*. We find both cases distinguishable from the present case and from *Wharton*. In *Cook*, this Court did indeed find that section 99-19-101 did not "grant Cook a right to a jury in a 'Miller hearing'." *Cook*, 242 So. 2d at 877 (¶44). Unlike Wharton and McGilberry, however, Jerrard Cook entered a guilty plea, waiving his right to jury sentencing under section 99-19-101.

6

¶12. In *Pham*, 716 So. 2d at 1103-04 (¶¶21, 24), the Mississippi Supreme Court held that the capital defendant was not entitled to a separate sentencing hearing before a jury under section 99-19-101 because the State did not seek the death penalty; therefore, the trial judge had only one option for sentencing—life without eligibility for parole.

> [G]iven the fact that there was only one sentence which Pham could receive upon a valid conviction of capital murder under the facts of this case, Pham's right to due process was not violated by the trial judge cutting out the extra, but meaningless, procedural step. To hold otherwise would elevate form over function.

*Id*. at 1104 (¶24). The State argues that because the death penalty is no longer an option, the trial court need not empanel a jury for resentencing. We disagree. Here, the *Miller* sentencing hearing allows the sentencing authority to decide whether to sentence McGilberry to life with or without eligibility for parole. Thus, we cannot say that remanding for the appropriate sentencing authority—the jury—would be a "meaningless, procedural step" elevating "form over function." *See Pham*, 716 So. 2d at 1104 (¶24).

¶13. As to McGilberry's claim of a "constitutional right" to have a jury consider the *Miller* factors, we expressly rejected this argument in *Cook*, concluding: "Unless the United States Supreme Court's opinions in *Miller* and *Montgomery* [*v. Louisiana*, 136 S. Ct. 718 (2016)] do not mean what they specifically say—that a judge may sentence the offender to LWOP—Cook does not have a constitutional right to be resentenced by a jury." *Cook*, 242 So. 2d at 876 (¶40). As noted, Cook pled guilty to capital murder; thereby, waiving his right to be sentenced by a jury under section 99-19-101. McGilberry has cited no authority that would persuade us to reconsider our holding. The remaining issues are moot based on our

7

decision to remand for a sentencing hearing before a jury.

¶14.    Under section 99-19-101, the Legislature has vested sentencing authority of a capital defendant solely with the jury, except in cases where the defendant pleads guilty. McGilberry was convicted on four counts of capital murder and sentenced by the jury under section 99-19-101. Therefore, based on this Court's analysis in *Wharton*, we remand this case for a *Miller* resentencing by a jury.

¶15.    **REVERSED AND REMANDED.**

**GRIFFIS, C.J., CARLTON, P.J., WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. McDONALD, LAWRENCE AND McCARTY, JJ., NOT PARTICIPATING.**