# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CT-00280-SCT

*DE'ANDRE DAMPIER a/k/a DEANDRE
DAMPIER*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/01/2021 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| TRIAL COURT ATTORNEYS: | HEIDLE CARTER SMITH |
| | MICHAEL SHELTON SMITH II |
| | MARY JANE LEMON |
| | TAMEIKA LADANYA BENNETT |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | TAMARRA AKIEA BOWIE |
| | OFFICE OF STATE PUBLIC DEFENDER |
| | BY:   GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  ASHLEY LAUREN SULSER |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT, JR. |
| NATURE OF THE CASE: | POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 12/07/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     In 2004, then-sixteen-year-old De'Andre Dampier participated in an auto-dealership robbery during which the business owner was murdered.  A jury convicted Dampier of capital murder.  And the judge sentenced him to the only statutory sentence available at the

time—life in prison without parole. In 2008, this Court affirmed Dampier's conviction and sentence. *Dampier v. State*, 973 So. 2d 221 (Miss. 2008).

¶2. Four years later, the United States Supreme Court ruled that imposing mandatory life-without-parole sentences on juveniles violates the Eighth Amendment. *Miller v. Alabama*, 567 U.S. 460, 465, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). Based on *Miller*, this Court granted Dampier's request to seek post-conviction relief from his life-without-parole sentence. After Dampier filed his PCR motion, but before the trial court addressed any of the *Miller* factors, the trial court vacated Dampier's life-without-parole sentence. Citing Mississippi Code Section 99-19-101(1) (Rev. 2020), Dampier then requested that a jury be convened to decide if he should be sentenced to life with or without parole. The trial judge denied this request. And after a hearing in which the trial judge considered the *Miller* factors, the trial judge reimposed a sentence of life in prison without parole.

¶3. Dampier appealed. And his appeal was assigned to the Court of Appeals, which affirmed. *Dampier v. State*, No. 2021-KA-00280-COA, 2022 WL 4903820 (Miss. Ct. App. Oct. 4, 2022). Dampier then sought certiorari review by this Court. Specifically, he argued that he had a statutory right to be resentenced by a jury. According to Dampier, our precedent on this issue—namely *McGilberry v. State*, 292 So. 3d 199 (Miss. 2020), and *Wharton v. State*, 298 So. 3d 921 (Miss. 2019)—is not only wrong but also has no application to his situation. We granted certiorari. And after review, we find no error in either *McGilberry* or *Wharton*. Nor do we find error in the Court of Appeals' application of those two cases in the appellate court's denial of Dampier's statutory claim.

2

¶4.     In *McGilberry*, we held that Section 99-19-101(1), triggered upon conviction of capital murder, "does not address the scenario before us—the resentencing of a juvenile offender based on the constitutional requirements of *Miller*." *McGilberry*, 292 So. 3d at 207. This is because, as we explained in *Wharton*, when a PCR petitioner like Dampier receives permission to proceed with a *Miller*-based claim in the trial court, what is going on is *not* a resentencing. *Wharton*, 298 So. 3d at 928. Rather, the petitioner is being given the opportunity to seek post-conviction relief and "show[] that, under application of the *Miller* factors . . . , the offender's life-without-parole sentence is unconstitutional." *Wharton*, 298 So. 3d at 927.

¶5.     For this reason, the trial court should not have vacated Dampier's sentence *before* considering Dampier's *Miller*-based PCR claim. To be clear, when we granted Dampier permission to file a petition for post-conviction relief in the trial court, we were doing just that—providing Dampier an opportunity to seek relief from his life-without-parole sentence based on the intervening *Miller* decision. Therefore, we reject Dampier's assertion that he had a statutory right to be sentenced by a jury. The decision to be made by the trial court was whether Dampier was entitled to post-conviction relief from his life-without-parole sentence, imposed for a crime committed when he was a juvenile. And Section 99-19-101(1) simply does not apply in this scenario.

¶6.     Thus, we agree with the Court of Appeals that the trial judge did not err by denying Dampier's request for jury sentencing. We also agree, for the reasons stated in the Court of Appeals' opinion, that the trial court did not err by ruling that, after a careful consideration

3

of the *Miller* factors, life without parole was an appropriate sentence for Dampier's crime.

¶7. We therefore affirm.

## Background Facts & Procedural History

### I. Conviction and Sentence

¶8. In 2005, Dampier was charged with the 2004 capital murder of Harry McGuffee, Jr., during the robbery of McGuffee's auto dealership. Dampier's older accomplice pled guilty. But Dampier was tried before a jury. The jury convicted Dampier of capital murder in 2006.

¶9. The State decided not to pursue the death penalty due to the fact Dampier was sixteen years old during the robbery-based murder. *Dampier*, 973 So. 2d at 227 n.17. So the trial judge sentenced Dampier to the only sentence statutorily available for capital murder—life in prison without the possibility of parole. *Id.* at 228; *see Pham v. State*, 716 So. 2d 1100, 1103 (Miss. 1998) (holding that when the State does not seek the death penalty for capital murder, "a trial judge may impose the only possible sentence"—life without the possibility of parole—"without formally returning the matter to the jury for sentencing"). When declaring Dampier's sentence, the trial judge observed—"I've seen a lot of defendants, and I've handed down a lot of sentences, and this sentence is as justified as any of them that I've ever handed down."

¶10. Dampier appealed. And this Court affirmed in 2008. *Dampier*, 973 So. 2d at 237.

### II. *Miller v. Alabama*

¶11. Four years later, in 2012, the United States Supreme Court handed down *Miller*, 567 U.S. 460. In that case, the Supreme Court held "that the Eighth Amendment forbids a

4

sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders." *Id.* at 479 (emphasis added). While "*Miller* does not prohibit sentences of life without parole for juvenile offenders," it does "require[] [the sentencing authority] 'to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Parker v. State*, 119 So. 3d 987, 995 (Miss. 2013) (second alteration in original) (internal quotation marks omitted) (quoting *Miller*, 567 U.S. at 480). Specifically, "*Miller* . . . identified several factors that must be considered by the sentencing authority . . . ." *Id.* at 995-96 (discussing *Miller* factors).

¶12.    Following *Miller*, Dampier filed a motion with this Court in May 2013. In this motion, Dampier alleged that, because he was sixteen years old at the time of the offense, his mandatory life-without-parole sentence was unconstitutional. *See* Order, *Dampier v. State*, No. 2013-M-00808 (Miss. Nov. 14, 2013). Dampier asked this Court to vacate his sentence and order a new sentencing hearing. *Id.* Alternatively, he requested leave to file a motion for post-conviction relief in the trial court. *Id.* This Court granted his request for alternative relief—leave to file in the trial court a motion for post-conviction relief seeking to vacate his sentence. *Id.*

### III.    PCR Proceeding

¶13.    In 2015, the trial court vacated Dampier's sentence and ordered a new sentencing hearing. This hearing was postponed multiple times over several years. In 2018, Dampier moved the trial court to impose a life-with-parole sentence or, alternatively, convene a jury to sentence him under Section 99-19-101. Two years later, Dampier moved again for jury

5

sentencing. The trial court denied this motion, determining that Dampier's "*Miller* resentencing" would be decided by the trial court.

¶14. The trial court held a hearing on February 23, 2021, for which Dampier was present. The trial court carefully considered both Dampier's and the State's arguments and each *Miller* factor. The court determined that Dampier "failed to convince the Court that the *Miller* considerations prohibit the imposition of a sentence of life without the possibility of parole in this case." The court thus sentenced Dampier to life without parole.

¶15. Dampier appealed. And we assigned his appeal to the Court of Appeals, which affirmed. *Dampier*, 2022 WL 4903820, at *19. In its opinion, the Court of Appeals considered and rejected all four of Dampier's appellate arguments—that Dampier had a statutory right to jury resentencing, that Dampier's sentence was disproportionate as a matter of law, that Dampier was wrongly denied adequate funds for the mitigation investigator, and that the trial court applied the wrong legal standard in sentencing Dampier to life without parole. *Id.* at **6-19.

¶16. Dampier petitioned this Court for writ of certiorari, which this Court granted specifically to address his argument that he had a statutory right to be resentenced by a jury. *See Guice v. State*, 952 So. 2d 129, 133 (Miss. 2007) (acknowledging and exercising this Court's authority to limit the question on certiorari review).

## Discussion

¶17. Dampier's argument to this Court—that he had a statutory right to be resentenced by a jury—is not novel. Twice this Court has considered claims by PCR petitioners in the same

6

position as Dampier who were sentenced to life in prison without parole pre-*Miller*. *McGilberry*, 292 So. 3d 199; *Wharton*, 298 So. 3d 921. And twice this Court has held that the sentencing statute on which Dampier relies—Section 99-19-101(1)—does not apply in the post-conviction-relief context when a petitioner seeks review of his sentence based on *Miller*. *McGilberry*, 292 So. 3d at 207; *Wharton*, 298 So. 3d at 925. Instead, Section 99-19-101(1) applies to the *initial* sentencing of a juvenile convicted of capital murder when, despite the parole prohibition in Mississippi Code Section 47-7-3(1)(c)(ii) (Rev. 2023), life imprisonment with the possibility of parole must be considered by the sentencer due to *Miller*. *Moore v. State*, 287 So. 3d 905, 919 (Miss. 2019).

¶18. Dampier does not deny these rulings. Nor does he argue that the trial court and Court of Appeals erred in its application of them in his case. Rather, he claims these ruling are "baffling" and should be overturned or at a minimum not applied to his case. We disagree. This Court has been clear that when a juvenile's sentence is being reviewed years after the fact due to the intervening *Miller* decision, the focus is on whether a *constitutional* violation has occurred. Section 99-19-101(1) simply does not come into play. *McGilberry*, 292 So. 3d at 207; *Wharton*, 298 So. 3d at 925-27; *see also* *Martin v. State*, 329 So. 3d 451, 457-58 (Miss. Ct. App. 2020).

### I. *Miller* does not mandate resentencing by a jury.

¶19. Despite *McGilberry* and *Wharton*'s clear holdings, the dissent insists that only a jury could impose Dampier's sentence. Respectfully, the dissent misses the constitutional issue before us. The issue is not Dampier's Sixth Amendment right to a jury. Dampier did not

7

receive an enhanced sentence or a sentence the Legislature has conditioned on a jury determining certain facts. So ***Ring***[1] and *Apprendi*[2] do not apply. ***McGilberry***, 292 So. 3d at 207 (holding there was "no Sixth Amendment *Apprendi* issue" because "the ***Miller*** factors are not elements of the crime that the sentencer must find beyond a reasonable doubt to impose a life-without-parole sentence").

¶20.    While it appears from Section 99-19-101 that there are three sentencing options for capital murder—(1) death, (2) life imprisonment without parole, or (3) life imprisonment with eligibility for parole—this third option is qualified by Mississippi Code Section 47-7-3(1)(c)(iii) (Rev. 2023). Miss. Code Ann. § 97-3-21(3) (Rev. 2020). And Section 47-7-3(1)(c)(iii) makes clear that no person shall be eligible for parole if sentenced to life in prison under Section 99-19-101. So in reality, our Legislature has provided only *two* sentencing options for capital murder—life without parole or death.[3] ***Pham***, 716 So. 2d at 1103.

¶21.    The State did not pursue the death penalty due to Dampier's age at the time of the crime. ***Dampier***, 973 So. 2d at 227 n.17. Had they done so, then, yes, a jury would have to weigh the aggravating and mitigating factors before imposing a death sentence. ***Ring***, 536 U.S. 584. But our Legislature places no such condition on the imposition of a life-without-parole sentence.

---

[1] ***Ring v. Arizona***, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).

[2] ***Apprendi v. New Jersey***, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[3] While codified under slightly different numbers, these three statutes have not substantively changed and provide the exact same sentencing options today as they did when Dampier was sentenced in 2006. *See* Miss. Code Ann. § 97-3-21 (Rev. 2006); Miss. Code Ann. § 99-19-101(1) (Rev. 2000); Miss. Code Ann. § 47-7-3(1)(f) (Rev. 2004).

¶22. Because life without parole was the *only* available sentence for Dampier, it was not an "enhanced sentence" or some other sentence that exceeded the statutory maximum penalty that could only be imposed after a jury found certain enhancement factors existed. Instead, our precedent makes clear that no constitutional or statutory violation occurred when the judge issued the sentence himself instead of reconvening the jury. *Pham*, 716 So. 2d at 1103.

¶23. The Supreme Court's *Miller* decision does not change this. The constitutional concern in *Miller* was not a juvenile's Sixth Amendment right to jury sentencing. Instead, *Miller* addressed a juvenile's Eighth Amendment right not to be subjected to mandatory life-without-parole sentences. In *Miller*, the Supreme Court held "that the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479 (emphasis added). While "*Miller* does not prohibit sentences of life without parole for juvenile offender," it does "require[] [the sentencing authority] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Parker*, 119 So. 3d at 995 (second alteration in original) (internal quotation marks omitted) (quoting *Miller*, 567 U.S. at 480).

¶24. "*Miller* . . . identified several factors that must be considered by the sentencing authority . . . ." *Id.* at 995-96 (discussing *Miller* factors). But neither *Miller* nor its progeny have required that a jury act as the sentencing authority. In fact, when *Miller* applies retroactively to the already imposed life-without-parole sentence—as it does here—"*Miller*

9

. . . does not require States to relitigate sentences . . . in every case where a juvenile offender received mandatory life without parole." ***Montgomery v. Louisiana***, 577 U.S. 190, 212, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016). Instead, "[t]he Supreme Court . . . left to the states the responsibility to determine how ***Miller*** is to be implemented in state-court proceedings and how to remedy a ***Miller*** violation or potential violation." ***Wharton***, 298 So. 3d at 926 (citing ***Montgomery***, 577 U.S. at 211-12).

¶25. In Mississippi, the procedural mechanism to remedy a potential ***Miller*** violation, when the juvenile defendant was sentenced *before Miller*'s retroactive application, is a PCR proceeding in which the trial court considers the ***Miller*** factors. ***McGilberry***, 292 So. 3d at 208; ***Wharton***, 298 So. 3d at 926-27. And this Court has made clear that when a PCR petitioner like Dampier receives permission to proceed with a ***Miller***-based claim in the trial court, what is going on is <u>not</u> *resentencing*. ***Wharton***, 298 So. 3d at 928. Rather, the petitioner is being given the opportunity to "show[] that, under application of the ***Miller*** factors . . . , the offender's life-without-parole sentence is unconstitutional." ***Wharton***, 298 So. 3d at 927. So the dissent's criticism that only the ***Miller*** factors were applied—and not the statutory aggravating/mitigating sentencing factors—is misplaced. The reconsideration of Dampier's life-without-parole sentencing in light of ***Miller*** and its factors was the *only* issue before the trial court.

## II. *McGilberry* and *Wharton* apply to Dampier's PCR.

¶26. As an alternative argument to his request that we overrule ***McGilberry*** and ***Wharton***—a request we deny—Dampier argues these two cases did not squarely address his

10

particular statutory claim because, in his case, his sentence was vacated before the trial court held a resentencing hearing in which the *Miller* factors were considered.

¶27.    Dampier tries to distinguish *McGilberry* and *Wharton*, arguing those cases concerned PCR evidentiary hearings and not criminal resentencings.  But just as in this case, the trial court in *McGilberry* mistakenly "vacat[ed] McGilberry's life-without-parole sentences *before* considering McGilberry's PCR motion." *McGilberry*, 292 So. 3d at 202.  This out-of-step action, however, did not alter " the procedural posture of McGilberry's case—a PCR hearing to consider the *Miller* factors[.]" *Id.* at 205.  "Simply put, while McGilberry was entitled to a *Miller* hearing, he was not entitled to a *Miller* hearing in front of a jury." *Id.*  The same was true in *Wharton*.  In that case we also held "it is error for our trial courts to vacate a juvenile's original life-without-parole sentence (or life sentence) *before* conducting a *Miller* hearing." *Wharton*, 298 So. 3d at 928 (emphasis added).

¶28.    Procedurally, Dampier is in the same position as the petitioners in *Wharton* and *McGilberry*. Indeed, in this Court's order granting Dampier permission to file his PCR petition, this Court rejected Dampier's request to vacate his sentence.  Order, *Dampier v. State*, No. 2013-M-00808 (Miss. Nov. 13, 2014). Instead, this Court granted Dampier permission to file a PCR petition in the trial court so he could have an opportunity to show his sentence was unconstitutional based on *Miller*.  *Id.*  Just as in *Wharton*, we find it was error to vacate Dampier's sentence *before* Dampier presented his *Miller* claim to the trial judge. *Wharton*, 298 So. 3d 927-28.  In other words, just as in *Wharton*, what was going on at the trial court was not a resentencing hearing.  So Section 99-19-101(1) was not triggered,

as Dampier and the dissent suggest. Instead, the trial court was conducting a PCR hearing in which Dampier was given the opportunity to present his claim that his sentence was unconstitutional based on *Miller*—a claim that the trial court rejected.

¶29. The only difference in this case and *McGilberry* and *Wharton* is that, in those cases, juries determined their original sentences. But as the Court of Appeals rightly observed in *Martin*, the difference between those who were initially sentenced by juries and those who were sentenced by a judge lacks "any legal significance." *Martin*, 329 So. 3d at 457.[4] The juveniles in *Wharton* and *McGilberry* were sentenced by juries because the State sought the death penalty. But here, just as with the petitioner in *Martin*, no sentencing jury was convened because the death penalty was not pursued—leaving life without parole as the *only* available sentence. *Dampier*, 973 So. 2d at 227-28 & n.17; *Martin*, 329 So. 3d at 457-58. In that scenario, this Court has been clear that a trial judge is not required to reconvene a jury for sentencing under Section 99-19-101(1) when there is only one available sentence to give. *Pham*, 716 So. 2d at 1103-04. So there is no distinction to be made between *Wharton* and *McGilberry* on one hand and *Martin* and this case on another. Following all four convictions, the trial court did not run afoul of Section 99-19-101(1) at sentencing. So no *statutory* violation occurred.

¶30. The real legal distinction to be drawn is between cases like Dampier's and *Moore*, 287 So. 3d 905. In that case, "Moore—a juvenile—was convicted of capital murder *post-Miller*

---

[4] Martin petitioned for certiorari review of the Court of Appeals' decision. Justice Coleman was among the eight Justices who voted to deny certiorari. *Martin v. State*, 329 So. 3d 1201 (Miss. 2021) (table).

12

but was denied his request for a jury sentencing." *Id.* at 919 (emphasis added). We determined Moore did have a statutory right for "his *initial sentencing* [to be] by a jury under Section 99-19-101," because "post-*Miller*" there was more than one sentencing option. *Id.* In doing so, we distinguished Moore's case from "scenarios in which defendants sought *resentencing* by a jury post-*Miller*"—which is the very scenario before us today. *Id.*

¶31. *McGilberry* plainly stated that "Section 99-19-101 does not address the scenario before us—the *resentencing* of a juvenile offender based on the constitutional requirements of *Miller*." *McGilberry*, 292 So. 3d at 207 (emphasis added). Thus, Dampier's claim that he was entitled to resentencing by a jury based on Section 99-19-101 is without merit.

## Conclusion

¶32. Again, it is Dampier's *constitutional* right as a juvenile not to be subject to automatic mandatory sentencing to life without parole that is at issue, not his statutory right to be sentenced by a jury "[u]pon conviction."[5] This Court has been clear, "while we find [a PCR petitioner making a *Miller* claim] is entitled to a *Miller* hearing, we do not find that he is entitled to a *Miller* hearing in front of a new jury." *Wharton*, 298 So. 3d at 925. The trial court applied this clear holding when denying Dampier's motion for jury resentencing. The Court of Appeals did so as well when affirming the trial court's decision. Because neither court erred on this issue—or any other issues addressed by the Court of Appeals' opinion—we affirm.

¶33. **AFFIRMED.**

---

[5] Miss. Code Ann. § 99-19-101(1).

**RANDOLPH, C.J., BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND KING, P.JJ., AND ISHEE, J.**

**COLEMAN, JUSTICE, DISSENTING:**

¶34. Mississippi law grants one convicted of capital murder a statutory right to be sentenced by a jury. Miss. Code Ann. § 99-19-101 (Rev. 2020). The Sixth Amendment to the United States Constitution guarantees the right to have aggravating factors considered by a jury before a sentence may be escalated. Dampier is currently serving a life sentence without the possibility of parole for capital murder, but no jury has ever weighed the applicable statutory aggravating and mitigating factors in imparting the harsher of two sentences. Accordingly, and with respect, I dissent.

¶35. Dampier has a right to be sentenced by a jury and for the jury to weigh the statutory mitigating and aggravating factors when imparting its sentence. We have previously written, "every capital-murder sentence is subject to Section 99-19-101, given its unambiguous language." *Moore v. State*, 287 So. 3d 905, 918 (¶ 52) (Miss. 2019). Moreover, the statute "uses mandatory language . . . [that] leaves the circuit court no discretion in sentencing." *Id.* (¶ 51). The sentencing statute directs the jury to consider mitigating and aggravating factors and, "[b]ased on these considerations, whether the defendant should be sentenced to life imprisonment, life imprisonment without eligibility for parole, or death." Miss. Code Ann. § 99-19-101(2)(d) (Rev. 2020). Aggravating circumstances to be weighed by the jury include, *inter alia*, whether the defendant knowingly created a risk of death to many persons, whether the crime was committed for pecuniary gain, and whether the offense was

14

"especially heinous, atrocious or cruel." Miss. Code Ann. § 99-19-101(5) (Rev. 2020). The statute also supplies the mitigating factors, which include, *inter alia*, the defendant's criminal history and impairment of the defendant's ability to conform his conduct to the law. Miss. Code Ann. § 99-19-101(6) (Rev. 2020).

¶36. No jury, or judge for that matter, has ever weighed the statutory mitigating and aggravating factors and sentenced Dampier to life without the possibility of parole. After his trial, the trial judge sentenced him to life without the possibility of parole without a jury because, in light of Mississippi's parole statutes, parole would not be granted to Dampier. After the trial court vacated his sentence during the instant post-conviction relief proceedings, no jury was impaneled to weigh the mitigating and aggravating factors as provided for in the statute when the trial jury is no longer available. Miss. Code Ann. § 99-19-101(1)(Rev.2020). The sentencing order entered by the trial judge makes clear that the trial judge did not consider the statutory aggravating and mitigating factors. The resentencing order finds only that *Miller v. Alabama*, 567 U.S. 460, 465 (2012), does not prohibit a life without parole sentence and makes no mention of the statutory aggravating and mitigating factors. Similarly, the Court's bench ruling indicates that only the *Miller* factors were considered. When giving the reasoning for his ruling at the end of the hearing, the trial judge made no mention of the statutory aggravating and mitigating factors and found only: "Defendant has failed to reach his burden of proof that he should be allowed to be parole eligible under the factors of *Miller v. Alabama*."

¶37. The lack of a jury's consideration of the statutory aggravating and mitigating factors

violates the holdings of the United States Supreme Court in *Ring v. Arizona*, 536 U.S. 584 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). "Capital defendants, no less than noncapital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Ring*, 536 U.S. at 589. Without the finding of the existence of sufficient aggravating factors under the statute, the maximum punishment Dampier can receive for his crime is life with the possibility of parole. *Ring*, *Apprendi*, and *Jones v. United States*, 526 U.S. 227 (1999), require that a jury make the determination. As discussed above, Dampier's situation is even more striking because at no point has any finder of fact, judge or jury, considered the statutory aggravating and mitigating factors in imparting his sentence. We have acknowledged the importance of the jury's role before. In *Hodges v. State*, 912 So. 2d 730 (Miss. 2005), *disagreed with on other grounds by Ross v. State*, 954 So. 2d 968, 987 (¶ 29) (Miss. 2007), the critical factor that led the Court to distinguish Mississippi's capital sentencing scheme from Arizona's was that the Mississippi scheme mandated that a jury weigh the aggravating factors. *Hodges*, 912 So. 2d at 777 (¶ 105).

¶38.    I would reverse Dampier's sentence and remand for a new sentencing hearing before a jury.

**KITCHENS AND KING, P.JJ., AND ISHEE, J., JOIN THIS OPINION.**

16