# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00381-COA

**JEREMY DEAN MARTIN A/K/A JEREMY D.**                    **APPELLANT**
**MARTIN A/K/A BABY CAINE**

**v.**

**STATE OF MISSISSIPPI**                                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/14/2018 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: STACY L. FERRARO |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MATTHEW WYATT WALTON |
| DISTRICT ATTORNEY: | ANGEL MYERS McILRATH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/18/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE J. WILSON, P.J., McDONALD AND McCARTY, JJ.

### J. WILSON, P.J., FOR THE COURT:

¶1.     In 2002, Jeremy Dean Martin was convicted of capital murder and sentenced to a term of life imprisonment without the possibility of parole. Martin was seventeen years and eight months old when he committed the offense. Following the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012),[1] Martin filed a motion for post-

---

[1] In *Miller*, the United States Supreme Court held "that *mandatory* life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" *Miller*, 567 U.S. at 465 (emphasis added). "*Miller* does not prohibit sentences of life without parole." *Parker v. State*, 119 So. 3d 987, 995 (¶19) (Miss. 2013). But it does require the sentencing authority to take into account

conviction relief in which he sought to be resentenced to a term of life imprisonment with eligibility for parole. The circuit court ultimately ruled that Martin was not entitled to relief under *Miller*. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. The Mississippi Supreme Court summarized the facts of Martin's crime in its opinion affirming Martin's conviction and sentence on direct appeal:

> After years of conflict, a derogatory remark made by his father, Robert Bruce Martin, led the seventeen-year-old Martin, his pregnant girlfriend Crystal Lynn Broadus ("Broadus"), and actual gunman Richard Jackson Jacobs ("Jacobs"), to plan to kill Robert Martin on March 21, 2000. Martin called Broadus and asked her to bring a gun to his home. Martin brought the weapon into his home. He then gave the gun to Jacobs who killed Robert Martin. Jacobs then removed Robert Martin's wallet and fled the jurisdiction along with Martin, Broadus, and accessory-after-the-fact Donnie Ryals.
>
> Martin and Broadus were picked up in Texas while walking along a highway after their car had broken down. After he was detained and signed a statement saying he understood and waived his rights under *Miranda v. Arizona*, Martin gave a confession to Texas Ranger Tony Leal as to the events that led to the murder.

*Martin v. State*, 854 So. 2d 1004, 1006 (¶¶2-3) (Miss. 2003) (paragraph numbering omitted).

¶3. A Jackson County jury found Martin guilty of capital felony murder with the underlying felony of robbery. After the State announced that it would not seek the death penalty, the circuit court sentenced Martin to a term of life imprisonment without the possibility of parole, which was then the only possible sentence.[2] The Mississippi Supreme

"several factors" related to the offender's age before imposing such a sentence. *Id.*

[2] *See Pham v. State*, 716 So. 2d 1100, 1103 (¶21) (Miss. 1998) (holding that in a capital murder case in which the State does not seek the death penalty, "a trial judge may impose the only possible sentence"—life without the possibility of parole—"without

2

Court affirmed Martin's conviction and sentence on appeal.

¶4. In 2012, Martin filed a petition for post-conviction relief based on the United States Supreme Court's decision in *Miller*. The circuit court subsequently entered an agreed order vacating Martin's sentence for resentencing pursuant to *Miller*. Following an evidentiary hearing, the court held that Martin was not entitled to relief under *Miller* and resentenced him to a term of life imprisonment without the possibility of parole. Martin appealed.

**ANALYSIS**

¶5. Martin advances a number of arguments on appeal, which may be summarized as follows: (1) that he has a right to be resentenced by a jury pursuant to Mississippi Code Annotated section 99-19-101 (Rev. 2015); (2) that he has a constitutional right to have a jury determine whether he is permanently incorrigible; (3) that the circuit court failed to comply with *Miller* and violated due process by not making a specific "finding that he is permanently incorrigible"; (4) that the circuit court should have applied a presumption against a life without parole sentence and should have required the State to prove beyond a reasonable doubt that he is permanently incorrigible; (5) that a sentence of life without parole violates the Eighth Amendment of the United States Constitution and Article 3, Section 28 of the Mississippi Constitution in all cases in which the defendant was under the age of eighteen at the time of the offense; and (6) that the circuit court misapplied *Miller*, clearly erred, or abused its discretion in resentencing him to a term of life without parole.

¶6. In a series of recent decisions, this Court and the Mississippi Supreme Court have

formally returning the matter to the jury for sentencing").

3

rejected arguments (2),[3] (3),[4] (4),[5] and (5).[6] Therefore, those arguments require no new discussion in this case. We now address Martin's remaining claims that he has a statutory right to be resentenced by a jury and that the circuit court's ultimate decision to resentence him to life without parole reflects a misapplication of *Miller* or an abuse of discretion.

### I. Martin is not entitled to be resentenced by a jury.

¶7. Martin argues that he has a statutory right to be resentenced by a jury. He relies on Mississippi Code Annotated section 99-19-101, which provides that after a defendant is convicted of capital murder, the court shall conduct a separate sentencing hearing and the jury[7] shall "determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment." Miss. Code Ann. § 99-19-101(1).[8] The

---

[3] *Wharton v. State*, No. 2017-CT-00441-SCT, 2019 WL 6605871, at *3 (¶19) (Miss. Dec. 5, 2019); *Jones v. State*, 285 So. 3d 626, 631 (¶¶14-15) (Miss. Ct. App. 2017), *cert. granted*, 250 So. 3d 1269 (Miss. 2018), *cert. dismissed*, No. 2015-CT-00899-SCT (Miss. Nov. 29, 2018), *petition for cert. filed*, Order, No. 18-1259 (U.S. Mar. 29, 2019); *Cook v. State*, 242 So. 3d 865, 876 (¶¶38-40) (Miss. Ct. App. 2017), *cert. denied*, 237 So. 2d 1269 (Miss. 2018), *cert. denied*, 139 S. Ct. 787 (2019).

[4] *Wharton*, 2019 WL 6605871, at *4 (¶25); *Chandler v. State*, 242 So. 3d 65, 69 (¶15) (Miss. 2018), *cert. denied*, 139 S. Ct. 790 (2019); *Jones*, 285 So. 3d at 632 (¶17); *Cook*, 242 So. 3d at 876 (¶39).

[5] *Wharton*, 2019 WL 6605871, at *4 (¶25); *Chandler*, 242 So. 3d at 69 (¶15); *Jones*, 285 So. 3d at 631 (¶¶14-15); *Cook*, 242 So. 3d at 873 (¶25).

[6] *Wharton*, 2019 WL 6605871, at *3 (¶22); *Jones*, 285 So. 3d at 631 (¶¶14-15); *Cook*, 242 So. 3d at 877-78 (¶45).

[7] The jury shall be the "trial jury" or, in certain circumstances, a new jury impaneled for sentencing. Miss. Code Ann. § 99-19-101(1). Under the statute, the judge may sentence the defendant only "if both the State . . . and the defendant agree thereto in writing." *Id*.

[8] Although the text of section 99-19-101 permits a sentence of life imprisonment with eligibility for parole, the parole-eligibility statute provides that no person convicted of

4

statute then requires the jury to make certain findings and consider and weigh certain aggravating and mitigating circumstances as part of its sentencing decision. *Id.* § 99-19-101(2)-(8).

¶8.     In *Wharton v. State*, No. 2017-CA-00441-COA, 2018 WL 4708220 (Miss. Ct. App. Oct. 2, 2018), *rev'd*, No. 2017-CT-00441-SCT, 2019 WL 6605871 (Miss. Dec. 5, 2019), this Court held that section 99-19-101 applies to capital cases in which a new sentencing hearing is required by *Miller*. *Wharton*, 2018 WL 4708220, at *4-7 (¶¶14-21). We concluded that in capital murder cases "the Legislature ha[d] vested sentencing authority in the jury," unless both the State and the defendant waive a jury in writing. *Id.* at *4 (¶15). We also relied on the Mississippi Supreme Court's order in *Dycus v. State*, No. 2012-M-02041 (Miss. Sept. 17, 2014), another capital case in which a *Miller* claim was raised in a motion for post-conviction relief. *Wharton*, 2018 WL 4708220, at *5 (¶18). Although *Dycus* was an unpublished panel order, the panel specifically ordered the circuit court to conduct "a new sentencing hearing *before a jury under Section 99-19-101*." *Dycus*, *supra*, at 2 (emphasis added). Thus, in *Wharton*, we held that the circuit court erred by denying Wharton's request for a jury, and we remanded the case for a new sentencing hearing before a jury pursuant to section 99-19-101. *Wharton*, 2018 WL 4708220, at *1 (¶3). Subsequently, this Court followed *Wharton*'s holding and reversed and remanded for resentencing in *McGilberry v. State*, No. 2017-KA-00716-COA, 2019 WL 192345, at *2-4 (¶¶9-14) (Miss. Ct. App. Jan. 15, 2019), *rev'd*, No.

_____

capital murder shall be eligible for parole. Miss. Code Ann. § 47-7-3(1)(e) (Supp. 2019). Thus, in a capital sentencing not involving a juvenile offender, there is "in reality . . . only a choice between death and life without parole." *Pham*, 716 So. 2d at 1103 (¶¶20-21).

2017-CT-00716-SCT, 2020 WL 372705 (Miss. Jan. 23, 2020). Both *Wharton* and *McGilberry* involved post-conviction collateral challenges to sentences that were imposed and became final prior the United States Supreme Court's decision in *Miller*.

¶9. In a subsequent decision in a direct appeal, our Supreme Court similarly held that section 99-19-101 applies to juvenile offenders who are convicted of capital murder "post-*Miller*." *Moore v. State*, No. 2017-KA-00379-SCT, 2019 WL 4316161, at *8-10 (¶¶46-59) (Miss. May 30, 2019). Thus, the Court held that a juvenile offender convicted of capital murder "post-*Miller*" is entitled to have a jury determine whether his life sentence should be with or without the possibility of parole. *Id.* at *10 (¶¶57-59). Moore, a juvenile offender, was convicted of capital murder and sentenced four-plus years after *Miller* was decided. *Id.* at *2-3 (¶¶14-15). Thus, the Supreme Court reversed and remanded Moore's case for resentencing by a jury pursuant to section 99-19-101. *Id.* at *10 (¶59).

¶10. However, in *Moore*, our Supreme Court also took care to distinguish this Court's decisions in *Wharton* and *McGilberry*. *Moore*, 2019 WL 4316161 at *10 (¶57). In *Moore*, the Supreme Court stated:

> [*Wharton* and *McGilberry*] dealt with scenarios in which defendants sought *resentencing* by a jury post-*Miller* (similar to the *Dycus* panel order). In contrast, Moore seeks his *initial sentencing* by a jury under Section 99-19-101, which the circuit court denied. In other words, our holding today is limited to the facts of this case: a minor convicted of capital murder post-*Miller* who was denied sentencing by a jury.

*Id.* In addition, our Supreme Court later granted certiorari in *Wharton* and *McGilberry*.

¶11. Six months after the decision in *Moore* issued, our Supreme Court reversed this Court's decision in *Wharton* and reinstated and affirmed Wharton's life-without-parole

6

sentence. *Wharton*, 2019 WL 6605871, at *9 (¶¶48-49). Our Supreme Court reasoned that *Miller* and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), require that a juvenile offender serving a sentence of life without parole "must be given *the opportunity to show* their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored." *Wharton*, 2019 WL 6605871, at *4 (¶25) (quoting *Montgomery*, 136 S. Ct. at 736-37) (emphasis added in *Wharton*). The Court further stated:

> Mississippi's [Uniform Post-Conviction Collateral Relief] Act ['UPCCRA'] provides this opportunity to prisoners, such as Wharton, whose convictions and sentences were final when *Miller* was decided. Consistent with *Miller* and *Montgomery*, prisoners such as Wharton are entitled to relief under the [UPCCRA] if they can demonstrate that their life-without-parole sentence is unconstitutional under the Eighth Amendment.

*Id.* at *5 (¶26) (citation omitted). The Court went on to hold that "it is error for our trial courts to vacate a juvenile's original life-without-parole sentence . . . before conducting a *Miller* hearing." *Id.* at *5 (¶29). The Court indicated that in such cases the circuit court should hold a non-jury "*Miller* hearing" under the UPCCRA rather than automatically setting aside the prisoner's sentence and conducting a "new sentencing hearing." *Id.*

¶12. More recently, our Supreme Court also reversed this Court's decision in *McGilberry*. In *McGilberry*, the Supreme Court made clear that section 99-19-101 applies only to a defendant's initial sentencing and "extends no rights to the scenario we face here—post-conviction review of [a] life-without-parole sentence" pursuant to the "new substantive rule of constitutional law" announced in *Miller*. *McGilberry*, 2020 WL 372705, at *1 (¶4). The Court held that "[w]hile *Miller* requires an individualized sentencing hearing, there is no constitutional or statutory right to a jury for that hearing." *Id.* at *8 (¶37). Therefore, the

7

Court held that the circuit court "did not err by denying McGilberry's motion to be resentenced by a jury." *Id.*

¶13.    Under our Supreme Court's decisions in *Wharton* and *McGilberry*, the circuit court did not err by denying Martin's request for a jury. Martin's conviction and sentence were already "final when *Miller* was decided." *Wharton*, 2019 WL 6605871, at *5 (¶26). And Martin was afforded an "opportunity to show" that he was entitled to post-conviction relief under *Miller* in the form of a full evidentiary hearing. *Id.* at *4 (¶25) (emphasis omitted) (quoting *Montgomery*, 136 S. Ct. at 736-37). The circuit court appointed two skilled attorneys to assist Martin and granted them funds to hire a mitigation expert and a clinical psychologist, Dr. Criss Lott, who testified at Martin's hearing. Based on the Supreme Court's decision in *Wharton*, Martin's non-jury evidentiary hearing provided him with a sufficient opportunity to show that he was entitled to relief under *Miller*. Martin was not entitled to a jury in the context of this post-conviction collateral challenge to his sentence. *McGilberry*, 2020 WL 372705, at *1 (¶4).

¶14.    In a post-*Wharton* letter to this Court, Martin seeks to distinguish his case from *Wharton* on the ground that he has never had a jury sentencing hearing, whereas Wharton was originally sentenced by a jury. However, we are unpersuaded that this distinction has any legal significance. Wharton was originally sentenced by a jury only because the State sought the death penalty in his case. In contrast, there was no sentencing hearing at Martin's trial in 2002 because the State announced after the guilt phase that it would not seek the death penalty. The trial judge in Martin's case did not reconvene the jury for a sentencing

8

hearing because a life-without-parole sentence was the only other possible sentence for a defendant convicted of capital murder. *Pham*, 716 So. 2d at 1103 (¶21). In *Pham*, our Supreme Court specifically held that a trial judge in a capital murder case was not required to reconvene the jury for sentencing when the State did not seek the death penalty. *Id.* at 1103-04 (¶¶21-24). Thus, under the law at that time, the trial judge committed no error by not reconvening the jury to sentence Martin.

¶15.   It is true that Martin would be sentenced by a jury if his trial were held today. *Moore*, 2019 WL 4316161, at *10 (¶¶58-59). However, our Supreme Court has now held that prisoners whose convictions and sentences were already final when *Miller* was decided are *not* entitled to be *resentenced* by a jury. *McGilberry*, 2020 WL 372705, at *1, *8 (¶¶4, 37); *Wharton*, 2019 WL 6605871, at *5 (¶¶26-29). Those offenders are instead entitled to an evidentiary hearing before a judge. *Wharton*, 2019 WL 6605871, at *5 (¶¶26-29); *see also id.* at *9 (¶50) (Kitchens, P.J., dissenting) ("Now the remedy in cases on collateral review is not a new sentencing hearing, but an evidentiary hearing under the [UPCCRA]."). Therefore, the circuit judge did not err by denying Martin's request for a jury sentencing hearing.

**II.     The circuit judge did not misapply *Miller* or abuse his discretion.**

¶16.   In *Miller*, the United States Supreme Court held that the Eighth Amendment to the United States Constitution prohibits the "mandatory" imposition of a life-without-parole sentence if the offender was under the age of eighteen at the time of his offense. *Miller*, 567 U.S. at 465. "*Miller* does not prohibit sentences of life without parole." *Parker*, 119 So. 3d at 995 (¶19). But it does require the sentencing judge "to take into account how children are

9

different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* (quoting *Miller*, 567 U.S. at 480). *Miller* also identified several factors that the sentencing judge must consider:

> Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Parker*, 119 So. 3d at 995-96 (¶19) (citations omitted) (quoting *Miller*, 567 U.S. at 477-78).

¶17. The burden is on the offender to convince the judge that the *Miller* factors are sufficient to prohibit the imposition of a sentence of life without the possibility of parole. *Wharton*, 2019 WL 6605871, at *4 (¶25); *Jones v. State*, 122 So. 3d 698, 702 (¶14) (Miss. 2013). "If . . . the judge determines that *Miller* does not mandate parole eligibility, then the judge *must* deny relief because the Legislature has provided by law that persons convicted of [capital] murder are not eligible for parole." *Cook*, 242 So. 3d at 873-74 (¶27); *see also Stromas v. State*, 618 So. 2d 116, 123 (Miss. 1993) ("It is the [L]egislature's prerogative, and not this Court's, to set the length of sentences.").

¶18. On appeal, "there are two applicable standards of review in a *Miller* case." *Chandler*, 242 So. 3d at 68 (¶7). "[W]hether the trial court applied the correct legal standard is a

10

question of law subject to de novo review." *Id.* "If the trial court applied the proper legal standard, its sentencing decision is reviewed for an abuse of discretion." *Id.*

¶19. Our Supreme Court outlined the "correct legal standard" in *Parker*: the sentencing judge must conduct a hearing and consider the several factors that the *Miller* opinion identified as relevant to the sentencing decision. *Chandler*, 242 So. 3d at 68 (¶¶8-9) (citing *Miller* and *Parker*). In this case, the circuit judge not only held an evidentiary hearing but also appointed two attorneys to represent Martin and authorized funds for Martin to retain experts in the fields of mitigation and psychology. Following the hearing, the judge issued a written decision that addressed Martin's family history, his psychological history, the circumstances of the crime, and the other *Miller* factors and their application to this case. Therefore, the judge applied the correct legal standard in reaching his decision. *Id.* We now consider the circuit judge's application of the *Miller* factors.

¶20. The circuit judge noted that Martin was only three months and nineteen days from his eighteenth birthday when he planned and helped carry out the murder of his father, Robert. The judge also found that Martin's crime did not reflect youthful impetuosity or a failure to appreciate the consequences. Rather, Martin and Jacobs planned in advance to kill Robert so that they could take his car and his money. Jacobs wanted to drive the car to his father's house in Texas, and Martin and his girlfriend, Broadus, planned to drive on to Las Vegas. Martin asked Broadus to steal a gun from her grandfather to commit the murder, and Broadus did so. Prior to the murder, Martin and Jacobs also threatened Robert's roommate, Ryals, that they would kill him too unless he helped them. Martin, Jacobs, Broadus, and Ryals then

11

packed their bags and loaded up the car so that they would be ready to go as soon as Robert was killed. Martin and Jacobs were alone in the house when Jacobs shot and killed Robert, who was asleep on the couch. Martin later confessed that Jacobs "put the shotgun about a foot from [Robert's] head," and Martin then "nodded [his] head up and down like saying yes." Jacobs then shot Robert in the head, and the two then stole Robert's keys and money and left in his car, as planned. On their way to Texas, they disposed of the murder weapon in a river or swamp in Louisiana. Given these facts, the circuit judge did not clearly err or abuse his discretion in finding that the circumstances of the crime did not indicate youthful impetuosity, recklessness, or a lack of appreciation of the consequences.

¶21. The circuit judge also took into account Martin's troubled family history, psychiatric history, and criminal history. Martin's parents divorced when he was only four years old. Prior to the divorce, Robert was already an alcoholic, and his marriage to Martin's mother, Christina, was violent, with Christina being the primary aggressor. After the divorce, Martin lived with Christina, who was reported several times for abuse or neglect because she would leave Martin in the care of others for days on end. Christina remarried when Martin was seven years old. Martin's stepfather may have been abusive and/or an alcoholic, and he did not like for Martin to contact Robert. As a result, Martin had little contact with Robert for about six years. Martin also later lived with two different aunts at times. Between the ages of twelve and sixteen, Martin began using alcohol and marijuana and later cocaine, methamphetamine, and other drugs. He also had an extensive youth court record. When he was twelve years old, he was arrested for shooting his mother with a BB gun. He was later

12

charged with assault, robbery, larceny, drug possession, malicious mischief, and uttering a forgery. Martin also received psychiatric treatment on multiple occasions and was diagnosed with depression, oppositional defiance disorder, and personality disorders.

¶22. When Martin was sixteen years old, he moved in with Robert, who worked as an electrician at Ingalls Shipyard. A short time after he moved in, Martin got into a fight with Robert and broke some of Robert's bones. Martin stated that Robert was an alcoholic and verbally abusive. Even so, Martin later told Dr. Criss Lott: "Out of all the people in the world [Robert] didn't deserve to be killed. If I ever needed help he was the one person I could call and he would help."

¶23. The circuit judge also found unpersuasive Martin's "suggestion . . . that he may have been a victim of peer pressure." Rather, it was the judge's "firm opinion . . . that Martin was an enthusiastic participant, if not the mastermind, of his father's execution." The judge stated that, in contrast to the defendants in *Miller* and its companion case, "Martin was at the very least a co-ringleader of the plot and its execution." The judge cited evidence that Martin expressed a desire to kill his father to Broadus and an aunt up to a week in advance of the murder. Martin also asked Broadus to obtain the murder weapon for him and planned the murder and his getaway. The sentencing judge also found that Martin "was perfectly able and competent to deal with police and prosecutors" following his eventual arrest. *See Parker*, 119 So. 3d at 996 (¶19) (quoting *Miller*, 567 U.S. at 477-78). The judge noted that Dr. Lott conceded that Martin understood his *Miranda* rights given his extensive criminal background and history in youth court. The circuit judge's findings on these issues are

supported by the evidence and are not clearly erroneous.

¶24. Finally, the circuit judge addressed the possibility of rehabilitation. The judge acknowledged Dr. Lott's opinion that "Martin's behavior could be reasonably stable in a structured environment." However, Dr. Lott also conceded that he could not say with any degree of certainty that Martin could be rehabilitated. The judge also noted that Martin's prison record showed twenty-eight rule violation reports for various infractions, including possession of weapons and materials used to make weapons. In addition, Martin had been affiliated with the Latin Kings gang while in prison, although he later tried to distance himself from the gang. In addition, Martin did not testify or present any other evidence to show that he had been or could be rehabilitated. Having considered all the evidence, the judge ultimately found that "[w]hile [Martin's] childhood was not without serious dysfunction, Martin's record up to the killing demonstrates that he was well on his way to, if not having actually attained, incorrigibility[.]" Again, the circuit judge's finding is supported by substantial evidence and is not clearly erroneous.

¶25. Despite the circuit judge's express consideration of the *Miller* factors, Martin argues that the judge's decision was an abuse of discretion and that his life-without-parole sentence is unconstitutional. Martin argues in part that we must reverse because the State did not present an expert to "rebut" Dr. Lott's opinion that Martin is not one of the "rare" juvenile offenders who can be sentenced to life without parole under *Miller*. However, we recently rejected the same argument in another *Miller* case, holding that the State had no special burden to present its own expert to rebut the same opinion offered by Dr. Lott. *See*

14

*Shoemake v. State*, No. 2017-CA-01364-COA, 2019 WL 5884479, at \*9 (¶43) (Miss. Ct. App. Nov. 12, 2019) (motion for rehearing pending). Moreover, we conclude that the circuit judge in this case appropriately considered all of the *Miller* factors, made findings that are supported by substantial evidence, and did not abuse his discretion. Therefore, the judge's ruling that Martin is not entitled to relief under *Miller* and Martin's sentence of life imprisonment without the possibility of parole are **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR. LAWRENCE, J., NOT PARTICIPATING.**